**Affirmed and Majority and Dissenting Opinions filed July 29, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00485-CV

---

### CITY OF HOUSTON, Appellant

### V.

### CATRENNIA FOREMAN SAULS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DWAYNE FOREMAN, DECEASED; AND TRISTENA CHRISTIAN, AS NEXT FRIEND OF D.F., A MINOR, Appellees

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2019-77138**

---

## MAJORITY OPINION

In this interlocutory appeal,[1] the City of Houston appeals the denial of its

---

[1] This court has jurisdiction to consider an interlocutory appeal from the denial of a summary judgment motion by a governmental unit seeking a dismissal based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 541 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

motion for summary judgment contending that governmental immunity shielded it from the lawsuit filed by Appellees, Catrennia Foreman Sauls, individually and as representative of the estate of her late son, Dwayne Foreman, and Tristena Christian, next friend of D.F., surviving minor child of Dwayne Foreman. We affirm.

## BACKGROUND

At approximately 8:50 p.m. on October 8, 2019, "a priority two call for service dropped regarding a suicide in progress." At the time, Houston Police Officer Hewitt and his partner Officer Curtis were eating dinner at the police station. When they returned to their patrol car, they "received a call slip from dispatch for the priority two suicide in progress," and dispatch alerted the officers that the call had already been on hold for 10 minutes. Hewitt pulled out of the police station in his marked patrol car and was en route together with Curtis to the destination at approximately 9:05 p.m. Hewitt never turned on the siren or emergency lights on his patrol car.

At the intersection of Ley Road and North Wayside, Hewitt stopped at a red light "and waited for the left turn signal to turn green." After turning left, Hewitt headed southbound on North Wayside, traveling at 62 mph; the speed limit was 40 mph. As Hewitt approached another intersection, "the A pillar of [his] cruiser and the trees on Wayside impeded [his] ability to see" Dwayne Foreman, who was riding a bicycle. Although Curtis attempted to draw his attention to Foreman, Hewitt did not see Foreman until it was too late. Hewitt hit Foreman with the police car as Foreman was riding his bike. Foreman died as a result of the accident.

On October 21, 2019, Appellees sued the City for "the wrongful acts, omissions, and/or negligence [of] the City's employees in the course and scope of

2

his/their employment" which proximately caused Foreman's death. The City filed an answer asserting, among other things, governmental immunity from suit and liability and official immunity to all of Appellees' claims. On April 9, 2020, the City filed a traditional motion for final summary judgment on immunity arguing the trial court lacked jurisdiction over Appellees' claims because the City's governmental immunity was not waived. First, the City contended that Hewitt was protected by official immunity, which preserved the City's governmental immunity. Second, the City contended that it was immune because the emergency exception in the Texas Tort Claims Act (the "TTCA") barred any possible waiver of its governmental immunity. As evidence in support of its motion, the City attached Hewitt's affidavit and deposition testimony from Officer Sartor, who investigated the accident and works in the vehicular homicide division of the Houston Police Department.

Appellees filed their summary judgment response a few weeks later, arguing that the City did not meet its burden to prove the official immunity defense applies because (1) the City failed to present evidence that Hewitt acted in good faith, *i.e.*, that he considered alternative courses of action and considered the risks of his conduct; (2) Appellees produced sufficient evidence to controvert the City's allegation that Hewitt acted in good faith; and (3) the City failed to establish that Hewitt acted in a discretionary function. Appellees also argued that the emergency exception in the TTCA does not apply because Hewitt (1) did not respond to an emergency call or react to an emergency situation; and (2) acted recklessly. Appellees attached as summary judgment evidence Sartor's deposition testimony, dispatch message log reports for Hewitt's patrol car, and the declaration of their expert Todd White — an attorney and former police officer.

On May 1, 2020, the City filed its objections to Appellees' summary

judgment evidence and reply in support of its summary judgment motion. The City mainly objected to White's declaration, arguing it should be stricken in its entirety because White is not qualified to testify as an expert and his opinions and statements are based on hearsay, violate the best evidence rule, are based on unsubstantiated factual conclusions and assumptions, and are conclusory. The City also argued that (1) Appellees did not raise a genuine issue of material fact that Hewitt performed a discretionary function; and (2) Hewitt responded to an emergency call or reacted to an emergency situation, and Hewitt did not act with reckless disregard. Appellees filed a response to the City's objections to their summary judgment evidence; and the City filed a reply in support of its objections.

On June 26, 2020, the trial court signed an order denying the City's motion for summary judgment, but the trial court did not sign an order regarding the City's evidentiary objections. In a June 30, 2020 letter, the City requested that the trial court rule on its evidentiary objections. A week later, the City filed an objection to the trial court's refusal to rule on the City's objections to Appellees' summary judgment evidence. That same day, the City filed its notice of interlocutory appeal.

ANALYSIS

## I. The City's Issues

The City challenges the trial court's denial of its motion for summary judgment in two issues. In its first issue, the City argues that the trial court erred in denying its summary judgment motion because "the competent, admissible evidence conclusively establishes that Officer Hewitt's official immunity shields" the City from Appellees' claims. In that regard, the City contends that:

(1) it met its initial summary judgment burden to conclusively prove that

4

Hewitt performed a discretionary function in the scope of his authority and in good faith because it conclusively established Hewitt (a) acted in the scope of his authority when he responded to an emergency call in his patrol car while on duty, (b) performed a discretionary act when he responded to "a priority two call for suicide just occurred" and exercised his "individual judgment" relying on "his previous experience with priority two calls for service regarding suicide in progress," and (c) acted in good faith when he considered viable alternative courses of action as well as the "degree, likelihood, or obviousness of the risks of his conduct"; and

(2) Appellees did not meet their responsive burden to create a genuine issue of material fact because (a) Appellees failed to establish that White was qualified to testify as an expert and the trial court therefore abused its discretion in considering White's declaration, and (b) White's declaration does not constitute competent, admissible evidence to raise a fact issue that Hewitt performed a ministerial function and did not act in good faith.

In its second issue, the City argues that the trial court erred in denying its summary judgment motion "because the competent, admissible evidence conclusively establishes that the TTCA's emergency exception preserves" the City's immunity. In that respect, the City contends (1) it "met its initial burden to invoke the TTCA's emergency exception" because it (a) presented some evidence that Hewitt responded to an emergency call at the time of the accident, and (b) established that Hewitt did not act with conscious indifference or reckless disregard; and (2) Appellees failed to meet their burden to present competent, admissible evidence that the emergency exception does not apply.

5

## II.      Standard of Review

Subject matter jurisdiction is necessary to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *4 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.).  A plaintiff must allege facts affirmatively showing the trial court has subject matter jurisdiction.  *Tex. Air Control Bd.*, 852 S.W.2d at 446; *Manning*, 2021 WL 1257295, at *4.  A party may challenge the lack of subject matter jurisdiction by a plea to the jurisdiction or by other procedural vehicles, such as a motion for summary judgment filed in this case.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.).   Because subject matter jurisdiction is a question of law, we review the trial court's ruling *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Manning*, 2021 WL 1257295, at *4.

To obtain a traditional summary judgment based on a lack of subject matter jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019).  A nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'"  *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).  While the City asserted immunity by way of a traditional summary judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction.  *Manning*, 2021 WL 1257295, at *4*; see also Miranda*, 133 S.W.3d at 228.  A defendant's

jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4.

The City challenged the existence of jurisdictional facts; therefore, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *See Miranda*, 133 S.W.3d at 227. "In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor." *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28.

## III. Official Immunity

The City argues in its first issue that the trial court erred in denying its summary judgment motion because "the competent, admissible evidence conclusively establishes that Officer Hewitt's official immunity" shields the City from Appellees' claims.

### A. Governing Law

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for its employees' acts unless its governmental immunity has been waived. *Manning*, 2021 WL 1257295, at *4; *Gomez v. City of Houston*, 587

7

S.W.3d 891, 896 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc); *City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The parties here agree that the City's immunity from suit and liability is governed by section 101.021 of the TTCA, which provides in relevant part:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law. . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). There seems to be no dispute that Appellees' claims arise from Hewitt's use of a motor vehicle and that Hewitt acted within the scope of his employment with the City when he answered the dispatch call. Instead, the parties' disagreement centers around whether Hewitt "would be personally liable to the claimant[s] according to Texas law." The City contends that Hewitt is protected by official immunity, which we address in this section of the opinion. The City also claims that the emergency exception to the section 101.021 waiver applies, which we address in section IV below.

Official immunity is an affirmative defense that protects a governmental employee from personal liability and thereby preserves a governmental employer's governmental immunity from suit for vicarious liability. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015) (per curiam). A governmental employee is entitled to official immunity for his good faith performance of discretionary duties within the scope of the employee's authority. *Id.* at 642-43;

8

*Gomez*, 587 S.W.3d at 897. Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of that defense. *Manning*, 2021 WL 1257295, at \*5; *Gomez*, 587 S.W.3d at 897. We first address whether the City conclusively established that Hewitt acted in good faith because this question is dispositive of the City's first issue.

A test of good faith is a test of objective reasonableness without regard to the employee's subjective state of mind. *City of San Antonio v. Riojas*, 640 S.W.3d 534, 538 (Tex. 2022); *Gomez*, 587 S.W.3d at 897. To be entitled to summary judgment, the City must carry its initial burden to prove conclusively that a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he had at the time. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994). The City does not have to prove that it would have been unreasonable not to take these actions, or that all reasonably prudent officers would have taken the same actions. *See Riojas*, 640 S.W.3d at 541; *Telthorster*, 92 S.W.3d at 465; *Manning*, 2021 WL 1257295, at \*5. Rather, the City must prove conclusively that a reasonably prudent officer, under the same or similar circumstances, might have reached the same decision. *See Telthorster*, 92 S.W.3d at 465; *Gomez*, 587 S.W.3d at 897.

That Hewitt "was negligent will not defeat good faith; this test of good faith does not inquire into 'what a reasonable person would have done,' but into 'what a reasonable officer could have believed.'" *See Telthorster*, 92 S.W.3d at 465 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997) (citing *Chambers*, 883 S.W.2d at 661 n.5)). The good faith standard is analogous to an abuse of discretion standard protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Riojas*, 640 S.W.3d at 540 (quoting *Bonilla*, 481

9

S.W.3d at 643 (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (per curiam) (quoting *Chambers*, 883 S.W.2d at 656, 657 n.7))).

Good faith depends on how a reasonably prudent police officer could have assessed both the need to which the officer was responding and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Wadewitz*, 951 S.W.2d at 467; *Gomez*, 587 S.W.3d at 897-98. The "need" aspect of the balancing test refers to the urgency of the circumstances requiring police intervention. *Wadewitz*, 951 S.W.2d at 467. In the context of an emergency response, need is determined by: (1) the seriousness of the crime or accident to which the officer is responding; (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and (3) what alternative courses of action, if any, are available to achieve a comparable result. *Id*. The "risk" aspect refers to the countervailing public safety concerns: (1) the nature and severity of the harm the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the original emergency); (2) the likelihood that any harm would occur; and (3) whether any risk of harm would be clear to a reasonably prudent officer. *Id*.

To prevail, a governmental defendant's proof must sufficiently address these need and risk factors. *Telthorster*, 92 S.W.3d at 462. An expert giving testimony regarding good faith must discuss what a reasonable police officer could have believed based on his perception of the facts at the time of the event, and this discussion must be substantiated with reference to each aspect of the need and risk balancing test. *Manning*, 2021 WL 1257295, at *6; *Belle*, 297 S.W.3d at 531; *see Wadewitz*, 951 S.W.2d at 466-67. Additionally, the facts of the case may require the expert to provide a continuing assessment of the need and risk factors because

"emergency responses and police pursuits may involve rapidly changing circumstances." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 582 (Tex. 2000); *Belle*, 297 S.W.3d at 531. "A police officer's own affidavit may establish good faith." *City of Dallas v. Ross*, No. 05-21-00001-CV, 2021 WL 4304478, at *4 (Tex. App.—Dallas Sept. 22, 2021, no pet.) (mem. op.).

A reviewing court analyzing these factors must determine first whether the governmental unit met its initial burden to conclusively prove the police officer's good faith. *Manning*, 2021 WL 1257295, at *6; *Gomez*, 587 S.W.3d at 898. Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *Manning*, 2021 WL 1257295, at *6; *Gomez*, 587 S.W.3d at 898. To raise a fact issue, the nonmovant must do more than show that a reasonably prudent police officer could have reached a different decision. *See Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643. Instead, the nonmovant must offer evidence that no reasonable police officer in the officer's position could have believed that the facts were such that they justified the challenged actions. *See Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643.

## B. Good Faith

The City contends it met its initial burden to conclusively prove Hewitt acted in good faith at the time of the accident because he "considered both the need to immediately respond to a call from dispatch regarding a suicide" and "the risk of harm to others from his driving." On appeal, as in the trial court, the parties' dispute focuses on whether the City demonstrated that (1) regarding the need aspect of the balancing test, Hewitt considered viable alternative courses of action; and (2) regarding the risk aspect, Hewitt considered or weighed the degree, likelihood, or obviousness of the risks of his conduct.

11

First, the City argues that its summary judgment evidence in the form of Hewitt's affidavit sufficiently established that he considered alternative courses of action. Relying on the supreme court's opinion in *Bonilla*, the City argues that no magic words are required to establish that a first responder considered the need-risk balancing factors, and a police officer's affidavit may implicitly address alternative courses of actions. According to the City, Hewitt's affidavit establishes his good faith because he implicitly discounted alternative actions as is allowed by *Bonilla*.

The supreme court in *Bonilla* (and most recently in *Riojas*) stated that magic words are not required to establish that a police officer considered the need-risk balancing factors. *Riojas*, 640 S.W.3d at 540; *Bonilla*, 481 S.W.3d at 645. The supreme court stated that summary judgment based on official immunity "requires that a movant establish facts upon which the court could base its legal conclusion, but no particular words are required." *Bonilla*, 481 S.W.3d at 645. Nonetheless, the court found that summary judgment proof "does not provide a 'suitable basis' for determining good faith if it fails to address several factors [the court has] identified as bearing on the need/risk analysis, including the availability of any alternative action." *Id.* at 644. Good faith is not necessarily negated if the summary judgment evidence reveals that the police officer had a viable alternative, but the evidence must still show the officer assessed the availability of any alternative courses of action. *Id.* Based on the trooper's affidavit, the court in *Bonilla* concluded:

> DPS's summary-judgment evidence detailed the specific circumstances giving rise to pursuit and emphasized the potential danger to the public due to the subject vehicle's erratic and unsafe activity. Although not explicitly addressing alternatives to pursuit, the trooper implicitly discounted the viability of other alternatives based on his stated belief that immediate action was necessary and his

12

> inability to identify the driver at that time. The fact that the trooper did not expressly identify "alternatives" that may have been considered does not render the evidence deficient.

*Id*. The City claims that Hewitt also implicitly discounted the viability of alternative courses of action because he stated in his affidavit that "[h]e has responded to many suicide in progress calls" and "considered the alternative of traveling with his emergency equipment activated, but decided not to deviate from the standard response to a priority two call for service (i.e., no emergency lights and siren) because the emergency equipment can agitate a patient and put them on the defensive, rather than understanding the officers are there to help." We disagree.

Hewitt's affidavit neither explicitly nor implicitly discusses or discounts the available alternative courses of action in this case, stating, in relevant part, as follows:

> I have responded to many priority two calls for service regarding a suicide in progress. When these calls drop, you never know what you are walking into. Sometimes, the patient can be merely destructive of property, but other times, the individual could have already physically injured themselves. Sometimes these individuals are aggressive towards responding officers. These people are typically in crisis; if they are on the incline of their crisis, they tend to be more profoundly aggressive and irate. If they are on the decline of their crisis, it can be easier to calm them down, help them understand you are there to help, and work to get them help. That is why I do not respond with lights and sirens when responding to a priority two call for service regarding a suicide in progress; emergency lights and sirens can agitate the patient and put them on the defensive rather than understanding officers are there to help.

Hewitt never explicitly nor implicitly addressed why, for example, he did not temporarily activate his emergency lights and siren when he left the police station and then deactivate the emergency equipment before arriving at the suicidal

13

patient's home. This would have made him visible to any drivers, bicyclists, or bystanders and would have allowed him to more quickly drive through the intersection at Ley and North Wayside (instead of losing time and waiting "for the left turn signal to turn green"). There is no language in Hewitt's affidavit from which we could conclude Hewitt reasonably discounted an available alternate action to achieve a comparable result. *See Wadewitz*, 951 S.W.2d at 467; *cf. City of Dallas v. Rodriguez*, No. 05-19-00045-CV, 2020 WL 1486831, at *5 (Tex. App.—Dallas Mar. 27, 2020, no pet.) (mem. op.) (officer stated in her affidavit that "there was no other reasonable alternative but to proceed through the intersection in the manner in which she proceeded" — she came to a complete stop; looked to her right and left; activated emergency lights, siren, and car horn; and proceeded slowly through intersection); *City of Dallas v. Hernandez-Guerrero*, No. 05-18-00033-CV, 2018 WL 6427641, at *4 (Tex. App.—Dallas Dec. 7, 2018, no pet.) (mem. op.) (officer "had no other reasonable alternative but to proceed through the intersection in the manner in which he proceeded" — he slowed to 21 mph, the vehicles he observed in the traffic lanes were all stopped, and his car's emergency lights and sirens were activated). Therefore, the City failed to demonstrate, with regard to the need aspect of the balancing test, what alternative actions were available to achieve a comparable result or that Hewitt considered and discounted those courses of action.

Second, the City contends that its summary judgment evidence demonstrated that, regarding the risk aspect of the balancing test, Hewitt considered or weighed the degree, likelihood, or obviousness of the risks of his conduct. The City points to Hewitt's affidavit in which he stated that (1) he obeyed the traffic signal at an intersection even though he could have disregarded it; (2) the traffic conditions were fairly light, the weather was clear, and the roads were dry; and (3) he decided

to drive at a speed of 55-60 mph although the speed limit was 40 mph because the call was for a suicide in progress. The City further relies on Sartor's deposition testimony, in which he stated that (1) Hewitt drove 62 mph at the time of the accident; and (2) Hewitt's speed was not excessive and that police officers travel 15 to 20 mph over the speed limit when answering the type of service call Hewitt answered. Relying on the supreme court's opinion in *Clark*, the City claims it met its summary judgment burden because "Hewitt testified that traffic was fairly light, the weather was clear, and the roads were dry, but it was night and fairly dark." According to the City, the supreme court in *Clark* held that an assessment of road, weather, and traffic conditions satisfies the requirement that an officer must consider or weigh the degree, likelihood, or obviousness of the risks of his conduct.

In *Clark*, the supreme court stated that just because a police officer's affidavit does not explicitly mention the risk of colliding with a third party does not mean that the officer did not assess that risk. *Clark*, 38 S.W.3d at 586. The supreme court found that in assessing such facts as the time of day and traffic as well as weather and road conditions, the police officer assesses the specific circumstances present that affected the risk of collision. *Id*. However, the summary judgment record in *Clark* did not establish whether there were other circumstances that increased or decreased this risk or that presented a different risk to the public. *Id*. Therefore, an assessment of road, weather, and traffic conditions may be sufficient when the record does not indicate that other circumstances affected the risks that were not assessed. *See id*.; *Martinez v. Harris Cty.*, 526 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Harris Cty. v. Smyly*, 130 S.W.3d 330, 335 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Hewitt's affidavit provided, in relevant part, as follows:

15

> Traffic conditions were fairly light. The weather was clear, the roads were dry, but it was night and the roadside lighting was rather dark. We pulled out of the station, turned right on Ley Road, and approached the intersection of Ley and North Wayside. At that intersection, I had the red light, came to a complete stop, and waited for the left turn signal to turn green. I turned left to head southbound on North Wayside. The speed limit was 40 miles per hour. I was traveling at 55-60 mph. Due to the nature of the call, and that the call had been holding so long, I believed traveling at that speed was necessary and reasonable. Since my partner was in the vehicle, I focused my attention on driving in as safe a manner as I reasonably could, while my partner monitored the MDT for updates on the call from dispatch.

> As our cruiser approached the intersection where the accident occurred, the A pillar of my cruiser and the trees on Wayside impeded my ability to see Mr. Foreman. Additionally, it was dark and there were no reflectors or lights on his bicycle to draw my attention. Shortly before the accident, my partner attempted to draw my attention to Mr. Foreman, but by the time I realized what was happening, we already made impact.

Hewitt stated that traffic conditions were fairly light, the weather was clear, the roads were dry, yet it was night and the roadside lighting was rather dark. But Hewitt never addressed that he assessed the risk of collision in light of the following other pertinent circumstances affecting the risks in this case, especially in light of the facts that (1) "it was night and the roadside lighting was rather dark"; (2) his ability to see Foreman was impeded by the A pillar of his patrol car and the trees on the road; and (3) the lack of emergency lights and sirens which would have made his patrol car very visible to other motorists, bicyclists, or pedestrians.

Contrary to the City's assertion, we cannot conclude based on the summary judgment evidence that the City demonstrated Hewitt (1) reasonably considered or weighed the degree, likelihood, or obviousness of the risks of driving without sirens and lights while speeding at night more than three miles away from his destination while his vision was obscured by the layout of his vehicle or (2)

16

sufficiently addressed the required risk factors of the need-risk balancing test. Therefore, we conclude that the City failed to meet its initial burden to conclusively establish that Hewitt acted in good faith at the time of the accident.[2] Accordingly, we overrule the City's first issue.

## IV. Emergency Exception

We now turn to the City's second issue in which it argues that the trial court erred in denying its motion for summary judgment "because the competent, admissible evidence conclusively establishes that the TTCA's emergency exception" preserves the City 's immunity. In that regard, the City contends that it met its initial burden to invoke the TTCA's emergency exception but that Appellees failed to raise a fact issue that the emergency exception does not apply by presenting some evidence that (1) Hewitt "was not responding to an emergency call or reacting to an emergency situation"; (2) "Hewitt's actions were not in compliance with the laws and ordinances applicable to emergency action"; or (3) "Hewitt's actions show that he did not care what happened to motorists."

### A. Governing Law

As we stated, the TTCA waives governmental immunity from suit and liability in certain limited circumstances when, as here, a party alleges that death arose from the operation or use of a motor-driven vehicle. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). However, the TTCA includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances under which a waiver of immunity does not apply. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 671-72 (Tex. 2006); *Gomez*, 587 S.W.3d at 902. One of the exceptions addresses

---

[2] In light of our disposition, we need not address the other arguments the City presents within its first issue.

17

emergency responses. Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Gomez*, 587 S.W.3d at 902. Under this exception to immunity, the TTCA does not apply to a claim based on a governmental employee's allegedly wrongful conduct if that employee, while responding to an emergency call or reacting to an emergency situation, acts in compliance with laws or ordinances applicable to the emergency actions or, absent such laws or ordinances, the employee's actions are not taken with conscious indifference to or reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *see also Hartman*, 201 S.W.3d at 671-72 (Tex. 2006); and *Gomez*, 587 S.W.3d at 902.

In its summary judgment motion, the City asserted that the TTCA's emergency response exception preserves the City's immunity from suit and liability. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1), 101.055(2). The City asserted that Hewitt was responding to an emergency call or reacting to an emergency situation, that he did not violate any applicable law or ordinance, and that he did not act with reckless disregard or conscious indifference. In support of this assertion, the City attached as evidence Hewitt's affidavit and excerpts from Sartor's deposition testimony. Once a defendant invokes the emergency exception, the plaintiff bears the burden to present some evidence that the emergency exception does not apply. *See Hartman*, 201 S.W.3d at 672; *Quested v. City of Houston*, 440 S.W.3d 275, 285 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 238-39 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022). Thus, Appellees were required to present sufficient evidence to raise a fact issue that: (1) Hewitt was not responding to an emergency call or reacting to an emergency situation; (2) Hewitt's actions violated laws or ordinances applicable to the alleged emergency situation; or (3) Hewitt's actions

18

were taken with conscious indifference or reckless disregard for the safety of others. *See Quested*, 440 S.W.3d at 285; *Little*, 259 S.W.3d at 238.

## B. Emergency

We begin by analyzing if a fact issue exists regarding whether Hewitt was responding to an emergency call at the time of the accident because that determination is dispositive of the City's second issue. In its brief, the City contends that it met its initial summary judgment burden to establish that at the time of the accident Hewitt was responding to an emergency call because its "motion presented evidence that Officer Hewitt was driving an HPD vehicle while responding to a priority two call for service for suicide . . . which is considered an emergency call."

The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *City of Houston v. Frazier*, No. 01-21-00318-CV, 2022 WL 1216181, at \*9 (Tex. App.—Houston [1st Dist.] Apr. 26, 2022, no pet. h.) (mem. op.); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at \*8 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op.); *see also City of Laredo v. Sanchez*, No. 04-20-00402-CV, 2020 WL 7364660, at \*5 (Tex. App.—San Antonio Dec. 16, 2020, pet. denied) (mem. op.). The word "emergency" is defined as "a sudden, urgent, usually unexpected occurrence or occasion requiring immediate action." *Emergency*, Dictionary.com, https://www.dictionary.com/browse/emergency (last visited May 31, 2022); *Emergency*, Webster's Third New Int'l Dictionary (3d ed. 2002).

The City presented evidence via Hewitt's affidavit and Sartor's deposition testimony excerpts that Hewitt responded to "a priority two call for service" which is considered an emergency call. Nonetheless, Hewitt's affidavit, Sartor's

deposition testimony, and Hewitt's patrol car dispatch message log reports[3] raise questions regarding whether Hewitt in fact responded to an emergency call.

Sartor testified that per rules called "general orders", a code two or priority two service call has to be dispatched to an officer within five minutes of receipt, and an officer must respond to that call within five minutes. Sartor specifically testified that code two calls "can't be in the queue for more than five minutes" and the officer has "to be there within five minutes of receiving the call." However, Hewitt stated in his affidavit that "a priority two call for service dropped regarding a suicide in progress" at approximately 8:50 p.m., but dispatch held the call for 10 minutes while Hewitt and his partner had dinner at the police station. Hewitt's patrol car message logs show that dispatch held the service call and that Hewitt did not receive and respond to the call until 9:05 p.m. Thus, the call was not dispatched within five minutes as required by general orders.

Hewitt also stated that "[d]ispatch said that there was a suicide in progress with a female patient that was irate, destroying property, and had a knife. The facts that the female patient was destroying property and had a weapon were what I understood to be the basis for why this call was dispatched as an emergency call." Yet, Hewitt's patrol car message logs show that dispatch stated "there are not weapons involved" and there was no mention of property destruction, raising a fact question whether there in fact was an emergency. The message log reports also indicate that at 9:06 p.m., dispatch provided an update that the caller had stated the patient needed to be transferred to Ben Taub hospital.

Despite knowing that the service call had been on hold for over 10 minutes,

---

[3] Appellees attached Sartor's deposition testimony as well as Hewitt's patrol car dispatch message log reports as evidence in support of their summary judgment response.

Hewitt waited at the red light at the intersection of Ley and North Wayside "for the left turn signal to turn green" instead of using his emergency lights and siren to safely and quickly get to the patient's residence. Further, the message logs show that Hewitt did not respond to the service call within five minutes as required. In fact, the message logs show that at 9:12 p.m., Hewitt had not yet arrived at the patient's residence — and at 9:14 p.m., the message log reports provide: "STEP IT UP C1 . . . NEED HFD QUICKLY 6900 N WAYSIDE . . . MALE WAS HIT BY VEHICLE." Thus, Hewitt did not respond to the service call within five minutes as required by general orders.

Based on this evidence, there is at least a fact issue concerning whether dispatch and Hewitt considered the service call to be an emergency call. Because the record shows a material fact issue exists regarding whether Hewitt was responding to an emergency call at the time of the accident, we conclude the trial court did not err in (1) finding that the TTCA's emergency exception does not preserve the City's immunity, and (2) denying the City's summary judgment motion. Accordingly, we overrule the City's second issue.[4]

## V.    Response to Dissent

Regarding the need-risk analysis, our dissenting colleague states that "[a]ssuming that the City was required to prove the need-risk factors, I would conclude that the City has met its burden" regarding the good faith element of official immunity. In that respect, our colleague asserts that "[t]he officer also considered the traffic conditions, weather, road conditions, lighting, and that his view was obscured by trees and the A pillar of his vehicle." However, we see no

---

[4] In light of our disposition, we need not address the City's other arguments presented within its second issue.

evidence in the record to support the assertion that Hewitt considered either the lighting on the night of the accident or the fact that his view was obstructed by trees on the road and his patrol car's A pillar.

Additionally, contrary to our colleague's contention that we "insiste[d] that the officer should have addressed the possibility of having his lights and sirens activated, for some undetermined amount of time while driving to the dispatched location," we did not insist; instead, this is only one aspect of our analysis. We also determined that Hewitt failed to sufficiently address the required risk factors of the need-risk balancing test, including weighing the degree, likelihood, or obviousness of the risks of speeding at night when his vision was impeded by trees and the layout of his patrol car.

## CONCLUSION

We affirm the trial court's order denying the City's motion for summary judgment.


/s/     Meagan Hassan
         Justice


Panel consists of Justices Wise, Spain, and Hassan. (Wise, J., dissenting).